**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**JODENE LARUE**                                                                                          **PLAINTIFF**

**V.**                                            **3:08CV157 JMM**

**DENSO MANUFACTURING ARKANSAS, INC.**                                     **DEFENDANT**

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Pending is the Defendant's Motion for Summary Judgment and the Plaintiff's Motion for Costs. Plaintiff has responded to the Motion for Summary Judgment and the Defendant has replied. For the reasons set forth below, the Motion for Summary Judgment is GRANTED. The motion for costs is MOOT.

### I. Facts

Denso Manufacturing Arkansas, Inc. ("Denso") is a supplier of heating, ventilation and air conditioning (HVAC) units for automobiles and New Generation Modular Radiators for heavy-duty off-road equipment. Honda Motors America ("Honda") purchases HVAC units for its automobiles from Denso. According to the affidavit of several witnesses, Federal Assembly, a third-party quality inspection company, was contracted to conduct a sort and inspection of Denso's HVAC units that were being sent to Honda. (Def.'s Ex. B, C, D, E). The sort and inspection began on February 14, 2008.

Staffmark, a temporary staffing agency, located and hired Plaintiff Jodene LaRue to assist with the sort and inspection. Staffmark instructed Plaintiff to report to Denso on February 14, 2008, for her assignment. Plaintiff was trained for her assignment by Yvonne St. Claire. Ms. St. Claire was an employee of Federal Assembly. (Def.'s Ex. E). During her employment at the

Denso facility, Plaintiff believed that she was an employee of Denso.[1] (Pl. Depo. at 118-119).

On February 25, 2008, Plaintiff and Denso Associate Curtis Moore were working in a confined area among racks of Honda motors. The passageway between these racks was about two feet wide. Plaintiff was inspecting the motors and Moore was scanning the motors for shipment. At some point during the performance of her job task, Plaintiff states that Moore rushed the speed of her work. Plaintiff subsequently claimed that during the inspection Moore's chest came in contact with the back of her right shoulder. No other part of Moore's body came in contact with Plaintiff's body. In the instant that Moore's chest made contact with Plaintiff's shoulder, Plaintiff responded, "Whoa, whoa, whoa, wait a minute. I give you no reason to do that." Moore immediately backed up and stated, "You can take your ass back over there and sit down." Plaintiff continued performing her job. Denso Team Leader Tracy Royster overheard the statement by Moore and instructed him to "cool it." According to Plaintiff, Royster was not in a position to see any physical contact between Plaintiff and Moore.

Plaintiff did not complain to Royster that Moore had brushed up against her. Plaintiff claims that she did not complain because she wanted to protect her job. Royster reported the shouting incident to his supervisor, Matthew McKiddy, an employee of Denso. McKiddy discussed the incident with both Plaintiff and Moore. During this discussion, Plaintiff reported to McKiddy that Moore told her to "sit her ass down" after she felt Moore was rushing the speed of her work. Again, Plaintiff did not report any physical contact by Moore. Moore told McKiddy that Plaintiff was working too slow and that he was trying to scan the shipment at the

---

[1] The Court does not find Plaintiff's relationship to Denso to be determinative in this case. Therefore, a detailed analysis of this issue is not necessary.

same time that Plaintiff performed her inspection.  McKiddy informed Moore that he was not to rush the speed of Plaintiff's work.

The next morning, February 26, 2008, Plaintiff reported to the Denso facility to continue with the Honda inspections.  Denso Team Leader Cory Arnold informed Plaintiff that the Honda inspections had ended and that she should report back to Staffmark for her next assignment.  Plaintiff asked Mr. Arnold if she could be re-trained for another position with Denso.  She did not, however, report any physical contact by Moore, any sexual harassment, or discrimination.

On February 27, 2008, Plaintiff wrote a complaint explaining that she was unhappy that she had not been told her job at Denso would end after two weeks and that she had been harassed and verbally abused by Curtis Moore.  The complaint was faxed by Staffmark to Denso Human Resources the same day.  According to Staffmark, Plaintiff's job assignment was scheduled to end on February 27, 2008, the same day Denso was notified of Plaintiff's complaints.  Denso claims that it was notified that the Honda inspection being performed by Federal Assembly would end on February 25, 2008.

Plaintiff filed a Complaint in this Court on September 23, 2008 alleging sex and age discrimination and retaliation against Denso in violation of her rights under Title VII.  Plaintiff specifically states that she was verbally and sexually abused by Curtis Moore during the incident on February 25, 2008.  She also claims that she was discriminated against because of her age and because she is a woman.  Further, Plaintiff claims that she was retaliated against because she complained about the incident with Moore on February 25, 2008.  On June 24, 2009, the Court dismissed Plaintiff's claim for age discrimination.

II.  <u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

III. <u>Discussion</u>

    A. <u>Gender Discrimination</u>

To avoid summary judgment, Plaintiff must present evidence "sufficient for a reasonable fact finder to infer that the employer's decision was motivated by discriminatory animus." *Fair v. Norris*, 480 F.3d 865, 869 (8th Cir. 2007). Plaintiff may establish unlawful employment discrimination by either direct or indirect evidence. *See Kratzer v. Rockwell Collins, Inc.,* 398 F.3d 1040, 1045 (8th Cir. 2005). "Direct evidence is evidence that establishes a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employment decision." *Shaffer v. Potter,* 499 F.3d 900, 904 (8th Cir. 2007)(internal citations omitted). Plaintiff has no direct evidence that her gender was a motivating factor in her termination.

Because Plaintiff fails to present direct evidence of discrimination, the Court analyzes her claim under the *McDonnell Douglas* analytical framework. In order to establish a prima facie case of gender discrimination, Plaintiff must show she (1) was a member of a protected class, (2) was qualified to perform her job, (3) suffered an adverse employment action, and (4) there are facts that give rise to an inference of gender discrimination. *Id.* "One way to meet the fourth element of the prima facie burden, is to show that [Plaintiff] and a similarly situated male 'were involved in or accused of the same or similar conduct and were disciplined in different ways.'" *Shaffer,* 499 F.3d at 905 (quoting *Turner v. Gonzales*, 421 F.3d 688, 695 (8th Cir. 2005)).

As a woman, Plaintiff is a member of a protected class. The Court will assume, because it has not been argued otherwise, that Plaintiff was qualified to perform her job as a sorter and inspector of Honda equipment parts and Plaintiff's position was terminated. However, Plaintiff has

5

failed to present any evidence that other similarly situated male workers were retained after the temporary Honda job ended on February 26, 2008.  There is no evidence that Curtis Moore was a temporary worker who had been hired specifically to work on the Honda project.  There is no indication that Moore worked exclusively on the Honda project as did Plaintiff.  The record also indicates that Mr. Moore was a permanent Denso employee.

Moreover, Plaintiff clearly states in her deposition that she does not believe she was discriminated by the Defendant because she was a woman.  (Pl. Depo. at 47).  Later, Plaintiff was asked again whether she felt like she was treated differently because she was a woman.  Plaintiff responded, "I don't know what the purpose of it was for."  (Pl. Depo. at p. 54).

The Court finds that Plaintiff has failed to state a prima facie case of gender discrimination. Defendant's motion for summary judgment as to Plaintiff's gender discrimination claim is GRANTED.

    B.  Sexual Harassment

Plaintiff filed suit under Title VII of the Civil Rights Act of 1964 which does not prohibit "sexual harassment," but makes is it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The United States Supreme Court has found that sex discrimination under Title VII includes sexual harassment "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67 (1986).

To establish a prima facie sexual harassment/hostile work environment claim, Plaintiff must prove: "(1) that she was a member of a protected group; (2) the occurrence of unwelcome

harassment; (3) a causal nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action." *Anda v. Wickes Furniture Co., Inc.,* 517 F.3d 526, 531-532 (8th Cir. 2008)(quoting *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546, 549-50 (8th Cir. 2007)). "To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant." *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th Cir. 2006). "Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.' " *Id.* (quoting *Tuggle v. Mangan*, 348 F.3d 714, 720 (8th Cir. 2003)).

Plaintiff contends that she was sexually harassed by Curtis Moore on February 25, 2008 when Moore squeezed in behind her in a tight work space and his chest brushed against her shoulder. Plaintiff protested and Moore backed away from Plaintiff stating, "just take your ass back over there and sit down." After reviewing the record and drawing all reasonable inferences in favor of Plaintiff, the Court finds that Moore's conduct did not rise to the level of severe or pervasive enough to be actionable under Title VII. As the Defendant points out, the Eighth Circuit requires extreme conduct over a considerable amount of time to rise to the level of a violation of Title VII. *See, e.g., Legrand v. Area Resources for Cmty. & Human Serv.,* 394 F.3d 1098 (8th Cir. 2005); *Duncan v. Gen. Motors Corp.,* 300 F.3d 928 (8th Cir. 2002). "Title VII does not prohibit all verbal or physical harassment in the workplace and is not a general civility code for the American workplace." *Hervey v. County of Koochiching,* 527 F.3d 711, 722 (8th Cir. 2008). Further, there is no evidence that Moore's actions had any connection to Plaintiff's sex.

For these reasons, Defendant's motion for summary judgment of Plaintiff's sexual

harassment claim is GRANTED.

    C. <u>Retaliation</u>

To establish a prima facie case of retaliation, Plaintiff must demonstrate (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *See Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) (citation omitted). It is undisputed that Plaintiff's job was terminated on February 26, 2008. Thus, Plaintiff suffered an adverse employment action. However, whether Plaintiff engaged in protected activity which caused the termination is problematic.

Plaintiff claims that even though she did not report the incident with Curtis Moore to a supervisor, the commotion created by the encounter was overheard by a supervisor. Therefore, management was aware of the incident. Plaintiff contends that this is enough circumstantial evidence to support this element of her retaliation claim. The Court disagrees.

There is no evidence in the record that Denso was aware that Moore physically touched Plaintiff on February 25, 2008, or that Plaintiff perceived the incident with Curtis Moore to be sexual harassment. Plaintiff admits in her deposition that she did not report the incident to anyone at Denso or Staffmark until after she was terminated. She admits that Tracy Royster, the Denso supervisor who initially arrived on the scene of the Moore incident, was not in a position to see that Moore had touched the Plaintiff. Therefore, besides Plaintiff's belief that Denso "should" have known Moore touched her, there is nothing in the record to support her position that she engaged in protected activity. Such skeletal allegations, unsupported with specific facts or evidence, are insufficient to create a genuine issue of fact so as to preclude granting summary judgment.

Furthermore, even if the Court found sufficient evidence to support Plaintiff's prima facie

case of retaliation, Plaintiff has failed to present evidence that Defendants' stated reason for her termination were pretextual.  Denso contends that Plaintiff's temporary job was completed on February 26th and that is the reason she was terminated.  Plaintiff has provided the Court with evidence from Staffmark that Plaintiff's project with Denso was scheduled to be completed on February 27, 2009, one day later.  Plaintiff contends that this evidence supports her position that she was terminated in retaliation for the Moore incident.  However, the fact that her project was completed one day ahead of schedule does not create such an inference.

For these reasons, Defendant's motion for summary judgment of Plaintiff's retaliation claim is GRANTED.

## IV.  Conclusion

The Defendant's Motion for Summary Judgment (Docket # 38) is GRANTED.  The Motion for Costs of trial (Docket # 49) is MOOT.  The Clerk is directed to close the case.

IT IS SO ORDERED this 31st day of August, 2009.

_____
James M. Moody
United States District Judge